IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) No. 02 CR 892 |
| v. | ) |
| | ) Judge Suzanne B. Conlon |
| ENAAM ARNAOUT, | ) |
| Defendant. | ) |

**MOTION TO SUPPRESS EVIDENCE SEIZED ON DECEMBER 14, 2001**

Defendant Enaam Arnaout, through undersigned counsel, respectfully requests this Court, pursuant to Fed. R. Crim. Pro. 12(b)(3) and 50 U.S.C. § 1825(f), to suppress evidence seized on December 14, 2001 from BIF's office in Palos Hills, Illinois; BIF's storage facility in Bridgeview, Illinois; and Mr. Arnaout's home in Justice, Illinois. This evidence was seized in flagrant disregard of the requirements of both the Fourth Amendment and the Foreign Intelligence Surveillance Act ("FISA"). In support of this motion, Arnaout states the following:

**I.     The Physical Searches and Seizures Violated FISA.**

On December 14, 2001, the FBI seized from BIF's office in Palos Hills and its storage facility in Bridgeview *all* of BIF's financial and business records and other documents and property, including computers, cellular telephones, and photographs of and files on BIF-sponsored orphans. *See* Ex. A (Evidence Recovery Log, dated 12/14/01); Ex. B (FBI Receipt for Property Seized, dated 12/14/01). On the same date, the FBI seized from the home of Mr. Arnaout, BIF's Chief Executive Officer, certain of his and his family's personal effects. *See* Ex. B. According to a form FBI agents presented to BIF staff on December 14, 2001, the FBI conducted these seizures pursuant to an Attorney General

Emergency Physical Search Authorization ("AGEPSA"), as authorized by the Foreign Intelligence Surveillance Act of 1978, 50 U.S.C. §§ 1821-1829 ("FISA"). *See* Ex. C (Mary M. Rowland Dec., ¶ 2). The AGEPSA purported to authorize the physical search of a person identified as "Samir Abdul Motaleb" at three separate locations: (a) the BIF office in Palos Hills, Illinois; (b) the storage facility rented by BIF in Bridgeview, Illinois; and (c) the address of the apartment building where Mr. Arnaout and his family reside. *Id.*, ¶ 3. The warrant, issued on December 15, 2001, the day *after* the search was conducted, apparently authorized FBI officials to conduct a physical search of BIF's premises and the home address of Mr. Arnaout–again erroneously naming "Samir Abdul Motaleb" as the target of the search. *Id.*

The Foreign Intelligence Surveillance Act allows for the physical search of United States persons for the limited purpose of acquiring foreign intelligence information under narrowly defined circumstances upon application to a specially designated court. *See* 50 U.S.C. § 1801(i). In order to conduct a physical search under FISA, the government must submit an application to a FISA court which includes: (1) the *identity of the target* of the search; (2) a *detailed description* of the property to be seized; (3) a statement of the facts and circumstances relied upon to establish that the target is an "agent of a foreign power" and that the premises contain foreign intelligence information; (4) the nature of the foreign intelligence sought; and (5) a certified statement that the information sought *is* foreign intelligence information, that a *significant purpose of the search is to obtain foreign intelligence information* and that such *information cannot be obtained through normal investigative techniques*. *See* 50 U.S.C. § 1823(a). Moreover, where the search involves a search of the residence of a United States person, the Attorney General shall state what investigative techniques have

previously been utilized to obtain the foreign intelligence information concerned and the degree to which those techniques resulted in acquiring such information. *See* 50 U.S.C. §1823(a)(8).

Upon being presented an application by the Attorney General, the FISA court must determine whether there is probable cause to believe that:

> (A) the target of the physical search is a foreign power or an agent of a foreign power, except that no United States person may be considered an agent of a foreign power solely on the basis of activities protected by the first amendment to the Constitution of the United States, and (B) the premises or property to be searched is owned, used . . . [by] an agent of a foreign power or a foreign power.

*See* 50 U.S.C. § 1824(a)(3). If the court determines that a FISA search is authorized, the order authorizing the search must specify (1) *the identity of the target* of the physical search; (2) the location of the premises to be searched; (3) the type of information, material, or property to be seized; (4) the manner in which the physical search is to be conducted; (5) whenever more than one physical search is authorized, *the authorized scope of each search;* (6) what minimization procedures shall apply to the information acquired by each search; and (7) the period of time during which physical searches are approved. *See* 50 U.S.C. § 1824(c). Finally, a "person against whom evidence obtained . . . from a physical search to which he is an aggrieved person is to be . . . introduced or otherwise used . . . in any trial" is entitled to have the material suppressed if "(A) the information was unlawfully acquired; or (B) the physical search was not made in conformity with an order of authorization or approval." 50 U.S.C. § 1825(f).

There is no doubt Arnaout has standing to move to suppress the evidence seized pursuant to the FISA searches.[1] However, the statute authorizes the government to request that the Court review

---

[1] The plain language contained FISA provides Arnaout standing to challenge the physical searches conducted in this case. *See* 50 U.S.C. § 1825(f); and see § 1801(k) ("Aggrieved person
(continued...)

3

the FISA material *ex parte* and *in camera* if the "Attorney General files an affidavit under oath that disclosure or adversary hearing would harm the national security of the United States."[2] 50 U.S.C. § 1825(g). This Court can reject the government's request and "disclose to the aggrieved person, under appropriate security procedures and protective orders, portions of the application, order or other materials relating to the physical search, or may require the Attorney General to provide to the aggrieved person a summary of such materials . . ." *Id.* As an initial matter, Mr. Arnaout requests that this Court order production of all pertinent documents to his counsel forthwith, pursuant to whatever protective order the Court deems appropriate. However, in the event the Court determines that *ex parte* review is appropriate, the Court should carefully scrutinize the government's conduct because the limited information available to Mr. Arnaout makes clear that the government violated FISA and/or the FISA court's order in a number of ways. If this Court determines that FISA procedures were violated, the governments' searches on December 14, 2001 were warrantless and unauthorized searches, the fruits of which must be suppressed pursuant to the Fourth Amendment.

---

[1](...continued)
means a person who is the target of an electronic surveillance or any other person whose communications or activities were subject to [electronic] [. . .] surveillance."). *See also United States v. Ott,* 827 F.2d 473, 475 (9th Cir. 1987) (accused had standing to argue that government violated FISA requirements by refusing to furnish him with transcripts of conversations to which he was not a party, but which were used against him); *United States v. Belfield,* 692 F.2d 141, 146 (D.C. Cir. 1982) ("aggrieved person" may move to suppress evidence obtained from such surveillance on ground that surveillance was illegal).

[2]Based upon previous filings in this and related matters, Arnaout believes the government intends to make such a request.

### A. Because the government misidentified the target of the search, there was no basis to conclude that Mr. Arnaout is an agent of a foreign power.

The government, plain and simple, failed to establish that Mr. Arnaout is an agent of a foreign power as required by FISA. Section 1801 of FISA defines an agent of a foreign power, in pertinent part, as a person who knowingly engages in clandestine intelligence gathering, or "knowingly engages in sabotage or international terrorism, or activities that are in preparation thereof," or in aiding and abetting the same. *See* 50 U.S.C. § 1801(b).

The only person mentioned in the AGEPSA–and the subsequently issued warrant–is Samir Abdul Motaleb. Mr. Arnaout is not identified in the AGEPSA, and Mr. Arnaout is not Samir Abdul Motaleb. The indictment, which lists four alleged aliases for Mr. Arnaout, makes no mention of Motaleb. In fact, the government has not presented a shred of evidence regarding the identity of "Samir Abdul Motaleb" or his connection, if any, to Mr. Arnaout. The government thus not only failed to properly identify the target of the search, as required by FISA, it *mis*-identified the target of the search. Whether or not the government established that Samir Abdul Motaleb was an agent of a foreign power, the government could not have established that Mr. Arnaout was an agent of a foreign power, for it never identified him as a target of the search. *See also Franks v. Delaware,* 438 U.S. 154, 155-56 (1978) (warrant based on information known to be false, or made with reckless disregard for the truth, is invalid and requires suppression of evidence seized pursuant to faulty warrant).

### B. The searches were made in furtherance of the criminal prosecution, not for the purpose of obtaining foreign intelligence.

FISA requires that a significant purpose of the search be to obtain foreign intelligence information which cannot be gathered through normal investigative techniques. 50 U.S.C. § 1823(a). To obtain a FISA warrant in this case, the government must have certified that the searches were

5

intended to obtain foreign intelligence information which could not be gathered through normal investigative techniques. If the government made any such representation in this case, it was simply false. According to the affidavit submitted in support of the criminal complaint, the government searched the trash of BIF in April 1999, November 2000 and December 2001, and its criminal investigation of Mr. Arnaout was similarly on-going. *See* Complaint at ¶¶ 48-50. No "normal" search warrant was ever executed at any BIF facility, or at Mr. Arnaout's home, although presumably the government could have so acted at any point prior to seeking FISA authority to do just that. In addition, any representation that the searches conducted pursuant to FISA on December 14, 2001 were for the purpose of obtaining foreign intelligence, as FISA requires, is simply not credible. *See* 50 U.S.C. § 1804(a)(7)(B); *United States v. Koyomejian*, 970 F.2d 536, 540 (9th Cir. 1992) ("FISA applies only to surveillance designed to gather information relevant to foreign intelligence . . . . FISA does not regulate surveillance conducted for purely domestic purposes.") (relying on *United States v. Torres*, 751 F.2d 875, 881 (7th Cir. 1984)). All of the material seized on December 14, 2001 has been produced in this case and used solely for purposes of prosecuting this case. The government simply has no basis to allege that any of the material seized was foreign intelligence information that could not have been obtained through normal, less intrusive, investigative techniques.

C. **Either the warrant failed to specify minimization requirements or the government flagrantly disregarded them.**

FISA requires the government, before executing a search, to implement procedures to minimize the acquisition and retention of nonpublicly available information concerning unconsenting United States persons. *See* 50 U.S.C. §§ 1823(a)(5) and 1824(a)(4). It is laughable to suggest that the government in this case complied with the minimization requirements contained in FISA. The agents in this case

*literally* cleaned out the BIF office, seizing approximately 400,000 documents, 16 hard drives, cellular telephones, family wedding photographs, personal effects of Mr. Arnaout and other BIF employees, *and even a microphone from Mr. Arnaout's son's Nintendo® game.* There was certainly no minimization by the agents during the course of or prior to the seizure. Moreover, almost four months *after* the searches and seizures, an attorney for the government admitted that the FBI was *then* belatedly engaged in "minimization . . . [putting] the documents . . . into categories of pertinent and non-pertinent." Ex. D (Tr. April 9, 2002) at 7-8. This statement is tantamount to an admission by the government that it engaged in no minimization of the items seized during the seizure or immediately thereafter. The statute contemplates contemporaneous minimization of the scope of the search, not minimization months after a business was effectively shut down as a result of all of its removable assets being removed by the government. In fact, the government only recently returned the seized documents to BIF and has yet to return items seized from Mr. Arnaout's home. *Cf. United States v. Squillacote*, 221 F.3d 542, 554 (4th Cir. 2000), *cert. denied*, 532 U.S. 971 (2001) (where defendants were charged with being spies for East Germany, the government executed a FISA warrant over six days, and ultimately seized only a miniature camera, a digital diary and memory cards, a doll with a roll of miniature film hidden inside, and copies of two secret U.S. government documents). For these reasons, the FISA warrant and/or the searches and seizures executed by the agents violated FISA's minimization requirements.

      **D.    The government improperly relied on FISA's emergency search provision to initiate a search prior to obtaining a court order, as no emergency circumstancesexisted.**

FISA allows the Attorney General to authorize an "emergency" physical search prior to submitting an application to the court if the Attorney General (a) informs a judge who has jurisdiction to

7

hear FISA cases, and (b) submits an application to that judge "as soon as practicable but not more than 72 hours after the Attorney General authorizes the search." 50 U.S.C. § 1824 (e). However, FISA requires a determination that "an emergency situation exists with respect to the execution of a physical search . . . before an order authorizing such search can *with due diligence* be obtained," as well as a factual basis justifying the search. *See* 50 U.S.C. § 1824 (e)(1)(B)(emphasis added). It is impossible to imagine how the government, had it exercised even the slightest due diligence, was unable to apply for an order authorizing the searches prior to conducting them. In light of the fact that FISA requires a warrant be issued within 72 hours of such an application, courts empowered to hear FISA matters are undoubtedly conditioned to resolve these matters expeditiously. Indeed, in this case, a warrant was issued within 24 hours *after* the supposedly emergency search was conducted. According to the Complaint, the investigation had been on-going since *at least* April 1999–more than two years prior to the "emergency" searches. *See* Complaint at ¶ 50. Having investigated this matter for over two years, it is stunning that the government could not wait a maximum of an additional 72 hours to obtain a FISA warrant before executing the searches. Particularly given the obvious error in identifying the target of the search as Samir Abdul Motaleb, the government's motive on this issue must be questioned. In any event, the government's attempt to rely on the "emergency" provision contained in § 1824(e) is improper.[3]

---

[3]Section 1822(a) authorizes physical searches to be authorized by the President for up to a year *without a court order*. However such searches are permissible only if the Attorney General certifies under oath that there is "no substantial likelihood that the physical search will involve premises or property of a United States person." *See* 50 U.S.C. § 1822(a)(1)(A)(ii). There is no question that the government violated FISA if they proceeded under this section since BIF and Mr. Arnaout are both United States persons.

8

If the Court finds, as it should, that the FISA "emergency" search provision was wrongly invoked by the government, then the search was simply a warrantless entry into the property of United States citizens. "A warrantless search or seizure is *per se* unreasonable unless the police can show that it falls in one of a carefully defined set of exceptions based on the presence of exigent circumstances." *United States v. Richardson*, 208 F.3d 626, 629 (7th Cir.) (internal quotation marks omitted), *cert. denied*, 531 U.S. 910 (2000). The government bears the burden of establishing the existence of exigent circumstances. *United States v. Basinski*, 226 F.3d 829, 833 (7th Cir. 2000).

## II. The FISA Court's Order and/or the Seizures Violate the Fourth Amendment.

The warrant authorized the search of BIF's office and storage facility, and Mr. Arnaout's home, in order to seize information, material, or property in order to obtain foreign intelligence. *See* Ex. C, ¶ 3. No further detail was provided. As stated previously, the agents in this case literally cleaned out the BIF office, seizing approximately 400,000 documents, 16 hard drives, cellular telephones, family wedding photographs, personal effects of Mr. Arnaout and other BIF employees, and a microphone from a Nintendo® game. Even if this Court somehow determines that this incredibly broad seizure was consistent with the minimization procedures required by FISA, it must conclude that, by providing no further guidance as to what was to be seized, the warrant left the seizure entirely to the unchecked discretion of the officers executing the warrant.

The blanket search warrant issued by the FISA court flies in the face of the long settled rule that a "general warrant" permitting the authorities to indiscriminately seize a person's books, papers, and other effects, violates the Fourth Amendment.[4] *Stanford v. Texas*, 379 U.S. 476, 486 (1965).

---

[4] Arnaout is not arguing that AGEPSA violates the Fourth Amendment; rather, that the AGEPSA warrant issued in this case violated the Fourth Amendment. While the government can cite a
(continued...)

9

*Accord Maryland v. Garrison*, 480 U.S. 79, 84 (1987); *Andresen v. Maryland*, 427 U.S. 463, 480 (1976); *United States v. Stefonek*, 179 F.3d 1030, 1032-33 (7th Cir. 1999). Indeed, the Supreme Court invalidated a nearly identical warrant in *Stanford*. There, a judge issued a warrant authorizing officials to search "a place where books, records, pamphlets, cards, receipts, lists, memoranda, pictures, recordings, and other written instruments concerning the Communist Party of Texas [and its operations] were unlawfully possessed," and to seize the listed items, pursuant to which the executing officers searched for and seized numerous books and periodicals. 379 U.S. at 478-80. The Court unanimously held that the "indiscriminate sweep" of the search warrant was a "constitutionally intolerable" general warrant, noting that "[t]o hold otherwise would be false to the terms of the Fourth Amendment, false to its meaning, and false to its history." *Id.* at 486. Similarly, in *Stefonek*, the Seventh Circuit held that a search warrant authorizing federal agents to seize "evidence of crime" violated the Fourth Amendment. 179 F.3d at 1032-33. The court explained: "So open-ended is th[is] description that the warrant can only be described as a general warrant, and one of the purposes of the Fourth Amendment was to outlaw general warrants." *Id.* at 1033. *See also Platteville Area Apartment Association v. City of Platteville,* 179 F.3d 574, 579 (7th Cir. 1999)(valid search

---

[4](...continued)
litany of cases which uphold AGEPSA in the face of a Fourth Amendment challenge, none of those cases find that AGEPSA did away with the well-settled Fourth Amendment principle forbidding general warrants. *See United States v. Johnson,* 952 F.2d 565, 573 (1st Cir. 1991) (FISA does not contravene Fourth Amendment prohibition of warrantless searches); *United States v. Isa,* 923 F.2d 1300, 1304 (8th Cir. 1991) (FISA does not violate probable cause requirement); *United States v. Pelton,* 835 F.2d 1067, 1075 (4th Cir. 1987) (same); *United States v. Duggan,* 743 F.2d 59, 73-74 (2d Cir. 1984) (FISA does not violate the probable cause requirement of the Fourth Amendment); and *United States v. Nicholson,* 955 F. Supp. 588, 590-91 (E.D. Va. 1997) (physical searches under FISA do not *per se* violate Fourth Amendment). *Cf. United States v. Cavanagh,* 807 F.2d 787, 791 (9th Cir. 1987) (electronic surveillance conducted pursuant to FISA provisions directed specifically at non United States citizens, complied with Fourth Amendment's probable cause and particularity requirements).

warrant particularizes the scope of the search by specifying its object); *United States v. Kow*, 58 F.3d 423, 426-29 (9th Cir. 1995) (warrant that "listed entire categories of documents to be seized, encompassing essentially all documents on the premises" was unconstitutional general warrant).

Finally, even if the search warrant itself is somehow to be sufficient, the agents' execution of the search was a general seizure that violated the Fourth Amendment. *See United States v. Foster*, 100 F.3d 846, 850 (10th Cir.1996) (where officers admitted they took "anything of value," court suppressed evidence because "there was a wholesale seizure of Foster's property amounting to a fishing expedition for the discovery of incriminating evidence"); *United States v. Medlin,* 842 F.2d 1194, 1198-99 (10th Cir.1988) (where warrant authorized the seizure of specific objects and hundreds of unauthorized items were seized, the court suppressed the evidence stating "even evidence that is properly seized pursuant to a warrant must be suppressed if the officers executing the warrant exhibit 'flagrant disregard' for its terms"); *United States v. Rettig,* 589 F.2d 418, 423 (9th Cir.1978) (where officers failed to "confine their search . . . to the objects of the warrant, and . . . substantially exceeded any reasonable interpretation of its provisions," all evidence seized during the search must be suppressed).

Under either scenario, the searches and seizures the FBI conducted undoubtedly violated the Fourth Amendment.

## IV. Conclusion

Based on the foregoing, Arnaout requests this Court (1) to order the government to disclose all documents submitted to the FISA court in this matter, pursuant to whatever protective order the Court deems appropriate; and (2) to conduct a hearing to allow the defendant the opportunity to challenge whether "(A) the information was unlawfully acquired; or (B) the physical search was not made in

conformity with" the order of the FISA court (see 50 U.S.C. § 1825(f)) in order to determine whether the materials seized should be suppressed.

Dated: November 26, 2002                    Respectfully submitted,

                                            ENAAM ARNAOUT


                                            By: _____
                                                   One of his Attorneys

Joseph J. Duffy
William P. Ziegelmueller
**Stetler & Duffy, Ltd.**
140 South Dearborn St., Suite 400
Chicago, IL 60603
312/338-0200–phone
312/338-0070–fax

## LIST OF EXHIBITS

| | Exhibit |
|---|---|
| Evidence Recovery Log, dated Dec. 14, 2001 | A |
| FBI Receipt for Property Received/Returned/Released, Seized, dated Dec. 14, 2001 | B |
| Declaration of Mary M. Rowland, dated July 18, 2002 | C |
| Transcript of proceedings before Judge Alesia on April 9, 2002 | D |

# See Case File For Exhibits